UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SABRINA SINANOVIC, individually and on behalf of all others similarly situated,

                      Plaintiff,

        v.

WAGNER COLLEGE,

                      Defendant.

**MEMORANDUM AND ORDER**
20-cv-5181 (LDH)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Sabrina Sinanovic ("Plaintiff"), on behalf of herself and on behalf of all others similarly situated, brings the instant action against Wagner College ("Defendant" or "Wagner"), seeking relief for: (1) breach of contract, (2) unjust enrichment, (3) conversion, and (4) money had and received. Defendant moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

**BACKGROUND[1]**

Defendant is a private liberal arts college in New York City with more than 2,000 students enrolled. (Compl. ¶ 2, ECF No. 1; Answer ¶ 2, ECF No. 8.) Various publications by Defendant include statements regarding the college's offerings[2]:

- **Wagner's Spring Semester 2020 Course Schedules[3]** ("Course Schedules"): The Course Schedules provide Plaintiff with information regarding "the courses offered, the instructor, the days and times during which the courses [are] held, and

---

[1] The facts are taken from the complaint and are assumed to be true for the purpose of this instant motion, unless otherwise noted.

[2] These documents have been incorporated into the complaint by reference. (*See, e.g.*, Compl. ¶¶ 51–60.) "It is well established that '[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.'" *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

[3] *Available at* https://my.wagner.edu/ICS/Registrar/Course_schedules.jnz.

the location (including the building and room number)[.]" (Compl. ¶¶ 4–5.) Students view the Course Schedules to make specific course selections before registering and paying the college tuition. (*Id.* ¶ 4.) The Course Schedule allow students to filter courses to see those that were offered online. (*Id.* ¶ 6).

- **The Wagner College Undergraduate and Graduate Bulletin** ("Bulletin"): The Bulletin outlined the policies, procedures, and expectations of Wagner students, including information on the importance of class participation and attendance. (*Id.* ¶ 7.) For example, the Bulletin notes "CLASS ATTENDANCE [:] Complete participation is expected in all classes and activities for which a student has registered[.]" (*Id.*) Further, the Bulletin includes what is called "The Wagner Plan." (Answer, Ex. A, ECF No. 8-1 at 9 ("Bulletin").) The Wagner Plan states that Defendant brings students "into conversations with each other as well as with the larger intellectual and cultural communities" of New York and that these conversations are enabled "by close interaction among faculty, students, and staff on the College's idyllic residential campus[.]" (*Id.* at 10.) The Bulletin further includes descriptions of the buildings students may use on campus. (*Id.* at 29–31.)

- **Student Handbooks:** Various student handbooks include representations "regarding in-person education and the importance of in-person class attendance." (Compl. ¶ 57.) For example, the Nursing Student Handbook states "[i]t is important for students to attend all classes. . . . [a]ttendance will be taken . . . [s]tudents who are absent from class more than two . . . times will have their course grade decreased by one letter grade (e.g. A to B)," (*Id.* ¶ 7); and, the Physician Assistant Program Student Handbook noted "[a]ttendance is mandatory for all program lectures, lab sessions (cadaver lab, patient assessment lab, SIM lab...) clinical experiences and other program activities[.]" (*Id.*) The Physician Assistant handbook further states that the college offers "intensive, supervised, hands-on learning experiences[.]" (*See, e.g.,* Answer, Ex. C, ECF No. 8-3 at 49 ("PA Handbook").)

- **The Wagner Faculty Handbook** ("Faculty Handbook"): The Faculty Handbook provides the policies and procedures for college faculty. (Compl. ¶ 9.) Of note, the Faculty Handbook instructs that "[o]ffice hours for the full–time faculty shall be not less than six (6) hours per week [and]. . . Part–time members of the instructional staff shall maintain two (2) office hours per week." (*Id.*)

- **The Tuition Rates & Fees Page** ("Student Activity Fee"): The college's website lists its tuition and fees and the purpose of those fees. (*Id.* ¶ 8.) For example. the Student Activity Fee is to be used by Defendant to "fund[] different types of activities, programs, and events[,]" including concerts. (*Id.*) "Other student activities and events funded by the [Student Activity] fee include discounted Broadway play tickets, poetry slams, comedians, other performers and speakers." (*Id.*). Further, the same page states that, as of the 2016-17 academic year, the university implemented a three-year "residency requirement" to help students "learn to live in a community of their peers." *See* Tuition Rates & Fees, Wagner Coll., https://wagner.edu/business-office/tuition_rates/. The page states that

2

students may request waivers of the residence requirement and that the residency requirement applies only to "residential students" and not "commuters[.]" (*Id.*)

Defendant's Spring 2020 semester began on or about January 21, 2020. (Compl. ¶ 29; Answer ¶ 29.) On March 10, 2020, and, in response to the COVID-19 pandemic, Defendant announced it would be cancelling all classes for the remainder of the week, through March 13, 2020. (Compl. ¶ 13; Answer ¶ 13.) On March 16, 2020, Defendant announced that it would be suspending all in-person classes and commence online-only courses beginning March 23, 2020. (Compl. ¶ 11; Answer ¶ 11.) The next day, on March 17, 2020, Defendant announced the immediate closure of its on-campus residence halls [or dormitory halls] and closed its physical campus the same week. (Compl. ¶ 12; Answer ¶ 12.) Defendant offered only online classes through the end of the Spring 2020 semester, which ended on May 1, 2020, with final exams concluding on May 12, 2020. (Compl. ¶¶ 13, 29; Answer ¶¶ 13, 29.)

Plaintiff was an undergraduate student at Wagner during the Spring 2020 semester and graduated with a bachelor's degree in nursing that same semester. (Compl. ¶ 19; Answer ¶ 19.) Plaintiff paid Defendant approximately $11,316.75 for her enrollment in the Spring 2020 semester, which included $490 in student fees, $150 in a graduation application fee, and $210 nursing lab fees, for a total of $850 in fees. (Compl. ¶ 19; Answer ¶ 19.)

## STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Bank of New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."). As such, to survive a motion for judgment on the pleadings, a "complaint must contain sufficient

3

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). As with a motion to dismiss under Rule 12(b)(6), a motion for judgment on the pleadings pursuant to Rule 12(c) "must be decided solely on the pleadings before the court, in addition to any materials implicitly or explicitly incorporated by reference into those pleadings." *U.S. v. Certain Real Property and Premises Known as 44 Autumn Ave., Brooklyn, N.Y.*, 156 F.R.D. 26, 30 (E.D.N.Y. 1994).

## DISCUSSION

### I. BREACH OF CONTRACT

Under New York law, it is well established that the relationship between a college and its students is "contractual in nature." *Prusack v. State*, 117 A.D.2d 729, 730 (2d Dep't 1986). More specifically, "if the student complies with the terms prescribed by the university and completes the required courses, the university must award [her] a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student[ ] become a part of this contract." *Vought v. Teachers Coll., Columbia Univ.*, 127 A. D. 2d 654, 655 (2d Dep't 1987). As with any contract, the interpretation of these materials is a matter of law for the Court. *See, e.g.*, *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) (interpretation of a contract is a matter of law).

4

That said, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998). To bring a breach of contract claim against an institution, "a student must identify specifically designated and discrete promises" that were allegedly breached. *Zagoria v. New York Univ.*, No. 20 Civ. 3610, 2021 WL 1026511, at *4 (S.D.N.Y. Mar. 17, 2021); *see also Hassan v. Fordham Univ.*, No. 20-CV-3265, 2021 WL 293255, at *4 (S.D.N.Y. Jan. 28, 2021) ("In keeping with the restrained approach that courts take with respect to disputes involving educational institutions, a cause of action for breach of contract . . . requires a contract which provides for certain specified services." (internal quotations omitted)). "In other words, [g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice." *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 413 (N.D.N.Y. Dec. 16, 2020).

Here, Plaintiff alleges she entered a contract with Defendant pursuant to which she provided payment in the form of tuition and fees and Defendant, in exchange, was to provide in-person educational services, experiences, opportunities, and other related services. (Compl. ¶ 3.) Thus, as Plaintiff alleges, Defendant breached its agreement with Plaintiff when it moved to exclusively virtual classes and closed its campus. (*Id.* ¶ 61.) Defendant argues that the complaint falls short of stating a breach of contract claim with respect to both Plaintiff's tuition Plaintiff and her fees. The Court considers Defendant's argument as to each in turn.

**A.  Tuition**

Plaintiff contends the in-person nature of the contract between the parties is evidenced from Defendant's various publications, including its course registration platform, undergraduate and graduate bulletins, and the tuition and fees webpage on Defendant's website. (*Id.* ¶¶ 53–59.)

5

Specifically, Plaintiff directs the Court to (1) Wagner's Spring Semester 2020 Course Schedules, (2) the Bulletin, (3) Student Handbooks, (4) Faculty Handbook, and (5) The Tuition Rates & Fees Page.

At the time of the filing of this lawsuit, few courts had addressed the issues presented in this case. Since that time, however, a number of courts in this circuit have considered arguments made under similar facts and have, in large measure, rejected them. Indeed, most courts have found, as the Defendants urge the Court to find here, that the statements of the sort proffered by Plaintiff do not amount to express promises for in-person education. *See, e.g.*, *Moore v. Long Island Univ.*, No. 20-cv-3843, 2022 WL 203988 (E.D.N.Y. Jan. 24, 2022); *De León v. New York Univ.*, No. 21-cv-5005, 2022 WL 179812 (S.D.N.Y. Jan. 20, 2022); *Marbury v. Pace Univ.*, No. 20-cv-3210, 2021 WL 5521883 (S.D.N.Y. Nov. 24, 2021).[4] For the reasons set forth below, this Court joins.

According to Plaintiff, the Course Schedules provided students with information regarding "the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held." (Compl. ¶ 5.) Notably, Plaintiff fails to identify any language in the Course Schedules that could be deemed a promise by Defendant to offer certain courses exclusively in person. Rather, Plaintiff highlights that the Course Schedules allowed students to search and filter for courses based on which ones were offered online or in person. (*Id.* ¶ 6). Plaintiff argues that, where students did not select an online option, that fact demonstrates an intent by students to select in-person instruction. (Pl.'s Opp'n at 12–13, ECF No. 15.). Perhaps. But, irrespective of

---

[4] The Court cannot help but note that rather than distinguish this case from these cases, Plaintiff conveniently and summarily states that those cases were wrongly decided. (Pl.'s Opp'n at 13, ECF No. 15.). As set out above, the Court disagrees.

a student's intention when selecting a class, the relevant inquiry is whether Defendant made a promise to Plaintiff to offer the class exclusively in person. Plaintiff does not explain how the filter capability can be reasonably construed as such a promise. At most, the Course Schedule allows for the inference that Defendant contemplated that any given class would be held in-person.[5] Nothing more.

*In re Columbia Tuition Refund Action* offers a helpful comparison for considering Defendant's course descriptions. *See* 523 F. Supp. 3d 414 (S.D.N.Y. 2021). There, the university's website stated that on-campus courses would be "taught with only traditional in-person, on-campus class meetings." *Id.* at 424. The court concluded that statement could plausibly be read to be a specific promise for in-person instruction. *Id.* No similar express statements are made in Defendant's Course Schedules. Similarly, in *Bergeron v. Rochester Institute of Technology*, relied on by Plaintiff, the plaintiff alleged a specific promise for in-person classes where, prior to COVID-19, defendant had a fully remote program for which it charged students "significantly less" than for its in-person program. No. 20-cv-6283, 2020 WL 7486682, at **1, 8 (W.D.N.Y. Dec. 18, 2020). Plaintiff makes no similar allegations.

Equally unhelpful to Plaintiff are the statements contained in Defendant's Bulletin and Student and Faculty Handbooks regarding attendance policies and faculty office hours. With

---

[5]*See, e.g.*, *Shak v. Adelphi Univ.,* 549 F. Supp. 3d 267, 273 (E.D.N.Y. 2021) (The course catalogue, the court concluded, "contains informational guidance" but not "express statements promising that these aspects of a course were not subject to change."); *Amable v. The New School*, 551 F. Supp. 3d 299, 311 (S.D.N.Y. 2021) ("Although these documents envision in-person instruction, details regarding class times and locations do not constitute[ ] a specific promise to provide exclusively in-person teaching.") (internal quotation marks and citation omitted); *Hassan v. Fordham Univ.*, 515 F. Supp. 3d 77, 88 (S.D.N.Y. 2021) ("The course catalog contains informational guidance regarding, for example, a course's instructor, location, and schedule. But there are no express statements promising that these aspects of a course were not subject to change.") (internal quotation marks and citation omitted); *see also Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (1st Dep't 1971) (reversing tuition refund when classes were suspended due to student demonstrations, because the "circumstances of the [university-student] relationship permit the implication that the professor or the college may make minor changes" to the services rendered by the university).

respect to the attendance policy, and as Defendant correctly argues, Plaintiff points to no statement suggesting that the attendance policy requires in-person, versus online, attendance. Likewise, Plaintiff fails to identify any statement suggesting that faculty were required to hold office hours in person instead of remotely. Put simply, these statements do not constitute a specific promise for in-person instruction. *See, e.g.*, *Hassan*, 515 F. Supp. 3d at 88 (finding similar allegation to be insufficient, in part, because "the attendance policy makes no distinctions among different modes of instruction, and tracking attendance is not a policy that on its face applies only to an in-person course[]").

Similarly, the residency requirement noted on Defendant's website fails to provide a basis to conclude that a contract for in-person learning existed. (Pl.'s Opp'n at 10–11.) A review of the Tuition & Fee page on Defendant's website only buttresses this conclusion. According to the website, the Residency Requirement did not apply to commuter students at all, it applied only to residential students in their first three years of study, and was otherwise subject to exemptions.[6] Notably, it is not altogether clear from the complaint whether Plaintiff herself was even subject to the residency requirement. Of course, that is neither here nor there as the requirement does not give rise to a contract.

Next, Plaintiff makes much of the fact that the Bulletin purportedly "touts" the various buildings, facilities and learning centers that students "can make use of in their on-campus experience." (Pl.'s Opp'n at 11–12.) According to Plaintiff, these statements "imply a promise for in-person education." (*Id.* at 11.) On this point, Plaintiff directs the Court to a host of out-of-state cases where the court found as much. (*See Id.* at 11–12 (citing *Salerno v. Fla. Southern Coll.*, 488 F. Supp. 3d 1211, 1217 (M.D. Fla. 2020) (applying Florida law); *Gibson v. Lynn*

---

[6] *See* Tuition Rates & Fees, Wagner Coll., https://wagner.edu/business-office/tuition_rates/ (explaining residency requirement).

*Univ., Inc.*, 504 F. Supp. 3d 1335, 1339 (S.D. Fla. 2020) (applying Florida law); *Botts v. Johns Hopkins Univ.*, No. ELH-20-1335, 2021 WL 1561520, at *6 (D. Md. Apr. 21, 2021) (applying Maryland law); *Bridget McCarthy v. Loyola Marymount Univ.*, No. 20-cv-4668, 2021 WL 268242, at *4 (C.D. Cal. Jan. 8, 2021) (applying California law); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1054 (N.D. Cal. 2021) (applying California law).) Plaintiff's argument, however, ignores the law applicable here. In this case, the Court is not looking for an implication of a promise, but, rather, an express statement of one. *See, e.g., Ford*, 507 F. Supp. 3d at 413 (noting "only specific promises . . . in a school's bulletins, circulars[,] and handbooks, which are material to the student's relationship with the school, are enforceable" (internal quotations omitted)).

Applying the legal standard under New York law, at least one other court in this circuit has found that statements touting buildings, learning centers, facilities and the like, simply inform students as to the amenities available on the physical campus, but do not rise to the level of a contractual promise to make these buildings available. *See, e.g.*, *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 239 (N.D.N.Y. 2021) (citation omitted) ("These statements, which seem to be intended to inform potential students of available amenities, do not amount to a 'contractually-enforceable *promise* to provide them irrespective of changing or unanticipated circumstances.'"). This Court agrees.

Finally, the Court is not convinced that general and vague statements regarding the learning experience Defendant offered rise to the level of a specific and discrete promise to offer in-person instruction. Plaintiff points to statements by Defendant that it offered "hands-on" learning experiences and creates a "culturally and socially diverse community for its students" in which students can engage in conversations "enabled by close interaction among faculty,

9

students, and staff on the College's idyllic residential campus." (Pl.'s Opp'n at 9, 11 (citing Bulletin at 10 & PA Handbook at 49).) Plaintiff contends that these statements "imply a promise for in-person education." (*Id.* at 11.) Not so. These statements simply describe abstract benefits of attending Wagner with no concrete language that may be enforced. Put differently, such statements are mere opinion or puffery that are too vague to be enforced. *See, e.g.*, *Amable*, 2021 WL 3173739, at *9 (concluding that similar statements are "classic example[s] of mere opinion or puffery that [are] too vague to be enforced as a contract" (quotation marks and citation omitted)). Nevertheless, Plaintiff argues that the contractual nature of these statements is particularly evident because they were repeated in the Bulletin, in subsections for the Wagner Plan, and in the college's mission statement. (Pl.'s Opp'n at 11, 14.) Yet, puffery, no matter how often it is repeated, is still puffery.

To persuade the Court otherwise, Plaintiff relies on *Espejo*, but that case plainly does not support her position. There, the court was "not persuaded that the vast majority of Plaintiffs' allegations"—which are strikingly similar to those made by Plaintiff here—"g[a]ve rise to a contractual agreement for in-person instruction." 523 F. Supp. 3d at 239. That said, the court found persuasive that Cornell's mission statement listed "experiences in the classroom" and "on campus" as comprising a "Cornell education." *Id.* Unlike in *Espejo*, here, the Bulletin containing the Wagner Plan and mission statement contains a disclaimer stating that the document "represents the academic policies, services, and course and program offerings . . . that are in effect as of August 26, 2019." (Bulletin at 11.) In other words, the Wagner Plan was subject to change. Plaintiff's reliance on *Ford* is similarly misplaced. There, the court found that statements by defendant in circulars implied a promise for an in-person experience where several of them were "declaratory, beginning with the phrase 'we will.'" 507 F. Supp. 3d at

10

411–15. Plaintiff points to no similar express language here evidencing a promise by Defendant.[7]

Plaintiff points to two other statements—missing from her complaint and its exhibits—as evidencing an implied promise by Defendant to offer in-person services. First, in an email to students following the school's closure, Defendant stated it would not "resume face-to-face instruction" in light of COVID-19. (Pl.'s Opp'n at 10, 11.) According to Plaintiff, the use of the word "resume" implies that the instruction was otherwise to be held in person. Further, Plaintiff claims that Defendant encouraged nursing students to maintain a "pleasant body odor" and that this statement evidences a promise for in-person instruction. (Pl.'s Opp'n at 10, 11.) The Court finds Plaintiff's argument with respect to these statements to be strained and without merit. That Defendant used the word "resume" does not by any means imply that Defendant had made a specific promise to its students for in-person instruction prior to the COVID-19 closure. And, Plaintiff cannot seriously contend that encouraging students to have "pleasant body odor" while in person somehow promises an exclusively in-person experience.

\*       \*       \*

Ultimately, the Court is not convinced that Plaintiff has alleged a specific and discrete promise by Defendant for in-person instruction. Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's breach of contract claim with respect to her tuition payments is granted.

---

[7] In a supplemental notice filed after Defendant's motion was fully briefed, Plaintiff directs the Court to *Flatscher v. Manhattan School of Music*, 551 F. Supp. 3d 273 (S.D.N.Y. 2021). (Pl.'s Not. of Suppl. Auth., ECF No. 19.) There, plaintiff, a vocalist, brought a breach of contract claim for tuition payments she made to the defendant, a musical conservatory. *See Flatscher*, 551 F. Supp. 3d at 277–79. Because the nature of a musical training program required in-person instruction and express statements defendant made with respect to the on-campus services it would provide students, the court found that plaintiff stated a claim for breach of contract with respect to her tuition. *Id.* at 285–86. Those are not the facts of the present case. The case is thus inapposite.

11

### B.      Fees

Plaintiff's breach of contract claim for her fees is a horse of a different color. Unlike her claim for breach of contract as to her tuition, Plaintiff points to statements by Defendant suggesting that her fees, at least in part, would be used to fund on-campus events or for in-person services. For example, Plaintiff alleges that the Website states that Student Activity Fee would be used to fund "different types of activities, programs, and events," including in-person concerts and other in-person events. (*Id.* ¶ 8.) And, Plaintiff alleges that the nursing lab fees—whose name alone suggests the use of a facility—were to be used for her in-person lab work and the use of on-campus lab facilities that were inaccessible while Defendant's campus was closed. (*Id.* ¶ 19.)

Consistent with other courts in this circuit, this Court finds these allegations sufficient to evidence a specific and discrete promise that the fees would, at least in part, be used to fund on-campus services that were not provided during the Spring 2020 semester. *See, e.g.*, *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *1 ("[T]o the extent that students [in tuition refund cases] have identified specific services or facility access that schools promised in exchange for tuition or fees, they have met with greater success."); *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 273 (E.D.N.Y. 2021) ("While Plaintiff has not adequately alleged a claim for breach of contract as to in-person instruction, Plaintiff's pleadings are sufficient with respect to the fees he paid, in part for in-person services.").

Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's breach of contract claim with respect to her fees is denied.[8]

---

[8] Defendant's reliance on *Romankow v. New York University* is misplaced. (Def.'s Mem. at 12–14, ECF No. 14-1.) There, plaintiff failed to allege "which fees were paid, which fees may have been refunded, and which fees should have been refunded but were not." No. 20-cv-4616, 2021 WL 1565616, at *4 (S.D.N.Y. April 21, 2021). In this

C.      **Educational Malpractice Doctrine**

The educational malpractice doctrine bars claims "that [a] school breached its agreement by failing to provide an effective education" because "courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods." *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (2d Dep't 1982). Defendant contends that Plaintiff's breach of contract claims should be dismissed because they run afoul of this doctrine. (Def.'s Mem. at 15, ECF No. 14-1.) In other words, as Defendant argues, Plaintiff seeks redress for Defendant's alleged failure to provide an effective education. (*Id.*) Plaintiff, however, maintains that she does not challenge the adequacy of the education offered by Defendant but, instead, her claims focus on whether Defendant kept its alleged promise to provide an in-person education. (Pl.'s Opp'n at 5–6.) The Court agrees with Plaintiff.

Throughout the complaint, Plaintiff points to statements allegedly made by Defendant that she contends rise to the level of a promise to offer in-person classes. (*See* Compl. ¶¶ 4–9.). As Plaintiff argues, Defendant breached this promise when it stopped offering in-person classes and closed its campus in response to the pandemic. Plaintiff's claim is thus grounded in contract, not tort, and therefore the educational malpractice doctrine does not apply. Critically, Defendant does not cite a single case in which a court has found the educational malpractice doctrine to apply in this context. The Court's conclusion is consistent with other district courts that have considered the doctrine's applicability to breach of contract claims arising out of college closures in response to COVID-19. *See, e.g.*, *Shak*, 549 F. Supp. 3d at 271 (noting that "[m]ost courts considering coronavirus tuition refund suits have found that such suits do not implicate the educational malpractice doctrine" and collecting cases)*; In re Columbia Tuition Refund Action*,

---

case, and as explained *supra*, Plaintiff alleges sufficient facts regarding the fees she paid and that those fees were to be used, at least in part, to provide in-person services.

523 F. Supp. 3d at 425 & n.55 ("The Court therefore joins the majority of district courts around the country that have declined to hold, at least on a motion to dismiss (or judgment on the pleadings), that claims arising from universities' adoption of online instruction in response to the COVID-19 pandemic are barred under the educational malpractice doctrine.").

## II. UNJUST ENRICHMENT

Defendant argues that Plaintiff's unjust enrichment claim must be dismissed as duplicative of Plaintiff's breach of contract claim. (Def.'s Mem. at 17.) The Court agrees.

"Where . . . the claim for unjust enrichment seeks the same relief as is sought for breach of contract, the unjust enrichment claim is properly dismissed as duplicative." *LG Capital Funding, LLC v. Ubiquity, Inc.*, No. 16-cv-3102, 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017) (citation omitted). "[C]laims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal quotation marks omitted). Plaintiff contends that it may maintain an unjust enrichment claim as an alternative to its contract claim. (Pl.'s Opp'n at 16.) While it is true that a plaintiff may plead an unjust enrichment claim in the alternative to a breach of contract claim, "New York courts have repeatedly dismissed unjust enrichment claims where there is no allegation that the contract at issue is invalid and the subject matter of the dispute is covered by the contract." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016) (citations omitted). Plaintiff does not challenge the validity of any agreement with Defendant nor does she allege facts to suggest her unjust enrichment claim is based on facts separate from her breach of contract claim. Put simply, the claims are impermissibly duplicative. *See, e.g.*, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (citation omitted) ("[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust

enrichment claim is not merely duplicative of their other causes of action."). Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's unjust enrichment claim is granted.

### III. CONVERSION

To state a claim for conversion under New York law, a plaintiff must allege that "someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession*." Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006) (citations omitted). A plaintiff may bring a conversion claim for the return of money only if the money is "specifically identifiable and segregated" and there exists "an obligation to return or otherwise treat in a particular manner the specific fund in question." *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124 (1st Dep't 1990). Further, "[a] cause of action for conversion cannot be predicated on a mere breach of contract." *Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015).

Here, Plaintiff does not allege that the tuition or fees she paid were kept in a separate identifiable fund such that Defendant had an obligation to treat the money in a particular manner. Nor does she attempt to distinguish her conversion claim from the facts underlying her breach of

15

contract claim—i.e., that Defendant did not offer in-person classes or tuition for the Spring 2020 semester. Plaintiff fails to state a claim for conversion.[9,10]

## IV. MONEY HAD AND MONEY RECEIVED

"The elements of money had and received are that [1] the defendant received money that belonged to the plaintiff, [2] that the defendant benefitted from receiving the money, and [3] that principles of equity and good conscience should not permit plaintiff to keep the money." *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 498 (S.D.N.Y. 2005) (citing *Aaron Ferer & Sons, Ltd., v. Chase Manhattan Bank*, N.A., 731 F.2d 112, 125 (2d Cir.1984)). Typically, "the remedy for money had and received is available if one . . . has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass." *Klein v. Frenkel*, No. 14-cv-2719, 2017 WL 2371173, at *5 (E.D.N.Y. May 30, 2017) (citation and quotation marks omitted). Instances in which a money had and received claim have been

---

[9] The Court's conclusion is consistent with other courts who have considered conversion claims arising out of COVID-19 tuition litigation. *See, e.g.*, *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *10 (W.D.N.Y. Dec. 18, 2020) ("Plaintiffs have not alleged "a specific identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question" . . . [r]ather, Plaintiffs voluntarily paid tuition and fees to [Defendant] in exchange for the full rights and privileges of student status . . . [u]pon voluntary payment of those monies, title legitimately passed to [Defendant]."); *Hassan*, 515 F. Supp. 3d at 96 (finding plaintiff's conversion claim should be dismissed on similar grounds); *Ford,* 507 F. Supp. 3d at 420–21 (N.D.N.Y. Dec. 16, 2020) ("[P]laintiffs cannot realistically argue that once that money was paid to defendant it remained intact, as opposed to pooling in with defendant's other funding. Thus, plaintiffs have failed to allege that their tuition and fee payments still exist as a 'specific, identifiable fund' that defendant could have converted." (citation omitted)).

[10] Even if Plaintiff had adequately pleaded conversion, she did not respond to Defendant's motion with respect to this claim. "When a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, . . . especially in the case of a counseled party where a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (internal citations and quotation marks omitted)); *see also Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2:18-cv-408, 2018 WL 4778906, at *8 (E.D.N.Y. Oct. 1, 2018) (finding that plaintiff's failure to respond to arguments raised in motion to dismiss constitutes an abandonment of those claims and collecting cases holding the same); *Javed v. Medgar Evers Coll. of the City Univ. of New York*, No. 15-CV-7424, 2017 WL 4357138, at *4–5 (E.D.N.Y. Sept. 29, 2017) (dismissing a series of claims for failure to respond to defendants' arguments), *aff'd sub nom. Javed v. Medgar Evers Coll. of City Univ. of New York*, 724 F. App'x 73 (2d Cir. 2018), *as amended* (June 12, 2018).

successful include "where plaintiff has paid money by mistake, money has been collected for an illegal tax or assessment, or property is erroneously taken or withheld by a public official." *Id*. No such allegations exist here.

Indeed, Plaintiff makes no attempt to argue that she states a claim for money had and received. Instead, she maintains that she may plead this claim as an alternative to her breach of contract claim. (Pl.'s Opp'n at 20.) Not so.

"As with unjust enrichment, there is no claim for money had and received where a contract covers the same subject matter for which relief is sought." *Zagoria,* 2021 WL 1026511, at *6 (citation omitted) (stating "no claim for unjust enrichment/money had and received can stand where, as here, a contract covers the same subject matter for which relief is sought"). As discussed above, Plaintiff and Defendant's relationship is covered by contract. Put simply, Plaintiff's money had and received claim is impermissibly duplicative of her breach of contract claim. *See, e.g.*, *Shak,* 549 F. Supp. 3d at 275 ("Any legitimate claims to fees will be resolved through Plaintiff's breach of contract claim. Accordingly, Plaintiff has not sufficiently pleaded the elements of money had and received[.]").

Accordingly, Defendant's motion for judgment on the pleadings on Plaintiff's money had and received claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is DENIED in part and GRANTED in part. Specifically, the Court DENIES Defendant's motion with respect Plaintiff's breach of contract claim for her fees and GRANTS Defendant's motion with

17

respect to Plaintiff's claims for unjust enrichment, conversion, money paid, and breach of contract for her tuition.

                                                                  SO ORDERED.

Dated: Brooklyn, New York                   /s/ LDH
       September 30, 2022                  L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                            United States District Judge